**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) ) Plaintiff, ) ) v. ) ) U.S. DEPARTMENT OF THE TREASURY ) ) ) Defendant. ) ) | Civil No. 17-1855 (RCL) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION**

**INTRODUCTION**

The picture of Treasury Secretary Steven Mnuchin and his wife, draped in luxury brand clothing that she named by designer in her Instagram post, stepping off a government airplane in Lexington, Kentucky hours before the solar eclipse set off a public firestorm. The outcry over perceived government waste and abuse triggered an avalanche of revelations about other cabinet secretaries and their use of private and government aircraft in lieu of far less costly commercial flights. Now, several months later, Health and Human Services Secretary Tom Price has resigned over the millions of dollars of travel expenses he incurred, and Treasury Secretary Mnuchin faces a second inspector general investigation into his travel, with an initial inspector general investigation already concluded. Yet, despite extensive media coverage of Secretary Mnuchin's travel and plaintiff CREW's[1] now months-old expedited Freedom of Information Act ("FOIA")

---

[1] CREW is the acronym for plaintiff Citizens for Responsibility and Ethics in Washington.

request for records related to his air travel, the Treasury Department has yet to produce to CREW a single document.

The government's only explanation in its recently filed answer to the complaint (Dkt. 9) is to claim ignorance of CREW's request, asserting "Treasury has no record of receiving a faxed transmission of CREW's August 23, 2017 request[.]" Answer, at 3 n.1. This claim is belied by the factual evidence CREW has provided government counsel, the publicity that surrounded the filing of CREW's FOIA request, and the notice afforded the Treasury Department by the filing of this lawsuit on September 11. Even crediting defendant's claim, however, fails to adequately explain or justify why the Treasury Department at this late date still has not responded to CREW's request.

Through this motion, CREW seeks an order compelling the immediate processing and production of the requested documents. CREW initially requested expedition because of the urgency to inform the American public about a matter of current exigency. Not only did Secretary Mnuchin's use of a government plane result in considerable controversy initially, it remains in the public spotlight and forms part of a larger narrative about the excessive travel costs incurred by multiple cabinet heads. Because plaintiff's rights and defendant's obligations are highly time-sensitive, plaintiff respectfully requests entry of an order compelling the Treasury Department to process and disclose the requested records immediately.

## STATEMENT OF FACTS

On August 21, 2017, Secretary Mnuchin and his wife Louise Linton, a private citizen, travelled to Lexington, Kentucky on a government plane. The purported purpose of the trip was for the Secretary, along with Senate Majority Leader Mitch McConnell, to present remarks at a luncheon sponsored by Greater Louisville, Inc., the Louisville chamber of commerce. Complaint

("Compl."), ¶ 12. After the luncheon, Secretary Mnuchin and his wife went to Fort Knox reportedly to tour the bullion reserve and view the solar eclipse. *Id.*, ¶ 13. Leader McConnell posted on Facebook a picture of himself, holding a pair of eclipse glasses, and Secretary Mnuchin that he described as "before we viewed the #solareclipse today."[2]

The trip set off a firestorm when Secretary Mnuchin's wife posted on Instagram a photo of herself deplaning from the government aircraft dressed from head to toe in luxury brands, which she identified by designer name and tagged on her Instagram image. Compl., ¶ 14. In response to a comment on the post, Ms. Linton snapped back in a post that was highly critical of the commenter and defended her lavish lifestyle and the government-paid trip. *Id.*

Two days later, on August 23, 2017, CREW sent a FOIA request by facsimile to the Treasury Department's FOIA Requester Center, using the address and facsimile number listed on the agency website. Compl., ¶ 15.[3] The facsimile cover sheet indicates a successful transmission. *See* Exhibit A. CREW's request seeks two categories of records: (1) copies of all records concerning authorization for and the costs of Secretary Mnuchin' use of a government plane for his August 21 trip to Lexington, Kentucky; and (2) copies of all records concerning authorization for and the costs of the Secretary's use of a government plane for any purpose since his appointment as Treasury secretary. Exhibit A; Compl., ¶ 15.

CREW sought a waiver of fees associated with processing its request. CREW explained the requested records likely will shed light on the justification for Secretary Mnuchin's use of a

---

[2] His Facebook entry was included in an article published on August 25, 2017, in *The Hill*, Mnuchin and Wife Viewed Eclipse from Fort Knox: Report (*available at* http://thehill.com/homenews/administration/347920-mnuchin-and-wife-viewed-eclipse-from-fort-knox-roof-report).

[3] *See also* https://www.treasury.gov/FOIA/Pages/bureaus.aspx (Treasury FOIA website) and the cover sheet to the request enclosed as Exhibit A.

government plane, rather than a commercial flight, for a trip that seemingly was planned around the solar eclipse and enabled Secretary Mnuchin to secure a viewpoint close to the path's totality. Compl., ¶ 16; Exhibit A. CREW noted that at a time of expected deep cuts to the federal budget, the taxpayers have a significant interest in learning the extent to which Secretary Mnuchin has used government planes for travel in lieu of less costly commercial flights, and the justification for that use. *Id.*

CREW also sought expedition of its request because the subject matter is of widespread and exceptional media interest and the requested information involves possible questions of the government's integrity that affect public confidence. Compl., ¶ 17. As CREW explained, the American public, which will bear the brunt of the tax policy Secretary Mnuchin is spearheading, has an urgent need for information about the policy's key architect, especially given the anticipated timeframe within which that tax policy is likely to be considered and debated in Congress. *Id.*

CREW's FOIA request along with the events that prompted it received extensive media coverage.[4] Shortly thereafter, on August 31, 2017, the Treasury Department's Office of Inspector

---

[4] *See, e.g.*, Drew Harwell and Beth Reinhard, Ethics Group Wants to Know What Led Mnuchin to View Eclipse in Kentucky, *Washington Post*, Aug. 24, 2017, *available at* https://www.washingtonpost.com/business/economy/mnuchin-viewed-eclipse-from-roof-of-fort-knox/2017/08/24/1b6ba9b4-8903-11e7-a50f-e0d4e6ec070a_story.html?utm_term=.0faaeab1ebd5; Emily Tillett, Ethics Watchdog Asks for Records of Mnuchin and Wife's Travel to Kentucky, *CBS News*, Aug. 25, 2017, *available at* https://www.cbsnews.com/news/steve-mnuchin-louise-linton-travel-kentucky-ethics-watchdog-crew/; Abigail Abrams, Watchdog: Steven Mnuchin and Wife May Have Used Government Plane to Watch the Eclipse, *Time*, Aug. 24, 2017, *available at* http://time.com/4915080/watchdog-steven-mnuchin-louise-linton-trip-eclipse/; Josh Delk, Watchdog Requests Document About Mnuchin and Wife's Ky. Trip Timed with Eclipse, *The Hill*, Aug. 23, 2017, *available at* http://thehill.com/homenews/administration/347713-watchdog-requests-documents-about-mnuchin-and-wifes-trip-to-ky-theres; Marina Fang, Ethics Group Wants to Know If Steve Mnuchin and Louise Linton Used Government Plane to See the Eclipse, *Huffington Post*, Aug. 24, 2017, *available at* https://www.huffingtonpost.com/entry/mnuchin-linton-watchdog-foia_us_599f1b15e4b05710aa5ac6c8; Melissa Quinn, Watchdog Group Wants

General announced it was "reviewing the circumstances of the Secretary's August 21 flight . . . to determine whether all applicable travel, ethics, and appropriations laws and policies were observed[.]"[5] Additional revelations followed, including that Secretary Mnuchin had requested a military jet to take him and his wife on their honeymoon to Scotland, France, and Italy, a request that ultimately was "deemed unnecessary[.]"[6]

On October 4, 2017, counsel to the inspector general ("IG") Rich Delmar issued a memorandum to Inspector General Thorson about the Secretary's use of government aircraft.[7] The IG Memo describes nine requests for use of government aircraft made on behalf of Secretary Mnuchin. Mr. Delman noted his view that none of the requests and uses violated the law, but also expressed a concern with "a disconnect between the standard of proof called for in [White House guidance] and the actual amount of proof provided by Treasury and accepted by the White House in justifying these trip requests." IG Memo at 20. The memo closes with the recommendation that "future requests be ready to justify government air in greater detail[.]" *Id.* Less than a week later, *CNN* disclosed that the Treasury Department inspector general was

---

to Know if Steven Mnuchin Used Government Plane to Get a Better View of the Eclipse, *Washington Examiner*, Aug. 23, 2017, *available at* http://www.washingtonexaminer.com/watchdog-group-wants-to-know-if-steven-mnuchin-used-government-plane-to-get-a-better-view-of-the-eclipse/article/2632393.

[5] Drew Harwell, Treasury Inspector General to Review Mnuchin's Flight to Fort Knox, *Washington Post*, Aug. 31, 2017, *available at* https://www.washingtonpost.com/business/economy/treasury-inspector-general-to-review-mnuchin-flight-to-ft-knox/2017/08/31/d9e122d4-8eb2-11e7-91d5-ab4e4bb76a3a_story.html?utm_term=.5598ca0e18a5.

[6] Henry C. Jackson and Josh Dawsey, Treasury Secretary Asked for Government Jet for Honeymoon, *Politico*, Sept. 13, 2017, *available at* http://www.politico.com/story/2017/09/13/mnuchin-government-jet-honeymoon-2422222696.

[7] That report ("IG Memo") is available on *Politico*'s website at http://www.politico.com/f/?id=0000015e-ee60-dfe3-abfe-ffe93fab0000.

"launching a second investigation into Steven Mnuchin's government travels after discovering it had not received a complete and accurate account of the secretary's flight information."[8]

*Procedural Background*

After receiving no response to its August 23, 2017 FOIA request, CREW filed the complaint in this action on September 11, 2017. On October 3, 2017, in response to a request from defendant's counsel, CREW emailed to counsel a copy of the August 23 FOIA request together with the facsimile sheet showing a successful transmission.[9] Plaintiff received no other communication from the defendant or its counsel. On October 19, 2017, 16 days after receiving a second copy of the FOIA request at issue, the Treasury Department filed its answer (Dkt. 9).

The Treasury Department's answer avers the agency "has no record of receiving a faxed transmission of CREW's August 23, 2017 request," and states it "is willing to respond to and process the version of the August 23 request as it was provided informally by counsel to Plaintiff[.]" Answer, at 3 n.1. In light of this statement, CREW contacted government counsel by email on October 20 seeking "a date certain by which Treasury will respond to [CREW's] request."[10] To date, government counsel has not responded to this email.

**ARGUMENT**

The revelations about Secretary Mnuchin's eclipse-day travel opened a proverbial Pandora's box that revealed widespread misuse of non-commercial aircraft – conduct that flies in the face of the President's promise to "drain the swamp." One cabinet secretary already has

---

[8] Donna Borak, Inspector General Launches Second Review of Steven Mnuchin's Travels, *CNN*, Oct. 11, 2017, *available at* http://money.cnn.com/2017/10/10/news/economy/treasury-inspector-general-mnuchin-travel/index.html.
[9] Answer, at 3 n.1; email from Anne Weismann to Mark Nebeker, Oct. 3, 2017 (enclosed as Exhibit B).
[10] Email from Anne Weismann to Mark Nebeker, Oct. 20, 2017 (enclosed as Exhibit C).

resigned after it was disclosed that he spent millions of taxpayer dollars on domestic and foreign trips, and new examples of travel abuse by others emerge on an almost weekly basis. This flagrant abuse erodes public confidence in our government, its leaders, and the processes we have for holding those officials accountable. CREW's FOIA request seeks information that would inform the public about the propriety of actions by Secretary Mnuchin, a top cabinet head, thereby serving a fundamental goal of the FOIA.

The context and subject of CREW's FOIA request demonstrate the critical need for preliminary injunctive relief. The Treasury Department has violated its clear obligations under the FOIA and the resulting harm to CREW and the public outweigh any legitimate interest of the government. Anything less than immediate injunctive relief will impede the ability of CREW and the public to examine Secretary Mnuchin's conduct in the context of the growing travel scandal.

## I.   CREW IS ENTITLED TO A PRELIMINARY INJUNCTION.

The FOIA confers on this Court jurisdiction to consider this matter and grant appropriate relief, including an injunction. The statute provides, in pertinent part:

> On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of of business . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.

5 U.S.C. § 552(a)(4)(B). In considering CREW's request for the entry of a preliminary injunction compelling defendant Department of the Treasury to process CREW's FOIA request and disclose responsive records immediately, the Court must assess four factors: (1) likelihood of success on the merits; (2) irreparable injury to the plaintiff; (3) burden on others' interests; and (4) the public interest. *Sherley v. Sebelius*, 644 F.3d 388 (D.C. Cir. 2011); *Mova Pharm. Corp. v.*

*Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)). Specifically, in FOIA cases, courts in this district have recognized preliminary injunctions may be appropriate. *See, e.g.*, *Elec. Privacy Info. Ctr. v. Dep't of Justice* ("*EPIC I*"), 416 F. Supp. 2d 30, 35 (D.D.C. 2006) (citations omitted). Consideration of these four factors here firmly establishes CREW's entitlement to injunctive relief.

      **A.     CREW is Likely to Prevail on the Merits of Its Claim.**

The sheer passage of time – two months since CREW submitted its expedited FOIA request – alone demonstrates CREW is likely to prevail on the merits, whether or not the Court agrees that CREW is entitled to expedited processing under the explicit terms of the FOIA and the Treasury Department's regulations.

The FOIA requires agencies to make a determination on requests for expedition within 10 calendar days "after the date of the request." 5 U.S.C. § 552(a)(6)(E)(ii)(I). Treasury Department regulations mirror this requirement, directing that a determination to grant or deny a request for expedition "shall be made, and the requester notified, within 10 calendar days of the date of the request." 31 C.F.R. § 1.5(e)(4). An agency's failure to respond within 10 calendar days to a request for expedition is subject to judicial review without exhausting administrative remedies. 5 U.S.C. § 552(a)(6)(E)(iii). For non-expedited requests, the FOIA requires the agency to "determine within 20 [business] days . . . after the receipt of . . . [a] request whether to comply with such request and shall immediately notify the person making such request of such determination[.]" 5 U.S.C. § 552(a)(6)(A)(i).

Here, the Treasury Department has failed to respond even within the generally applicable 20-working-day time limit established by 5 U.S.C. § 552(a)(6)(A) for non-expedited requests,

which ran on September 21, 2017. The agency attempts to excuse this failure by the claim it never received CREW's request. This defense lacks credibility. The facsimile sheet accompanying CREW's request documents a successful transmission to the facsimile number identified on the Treasury Department's website. Further, it strains credulity that, given the extensive publicity CREW's FOIA request generated,[11] the Treasury Department truly had no inkling CREW had filed its request. Moreover, even if the Treasury Department somehow was not aware of the request at the time it was submitted, CREW filed its complaint in this case on September 11, 2017, and service was perfected on September 19. *See* Dkt. 5-7. Yet that did not prompt a single inquiry from the Treasury Department until October 3 when, in response to a request from defendant's counsel, CREW emailed to counsel a copy of both the FOIA request and the facsimile transmission sheet. When presented with this evidence on October 3, the Treasury Department still failed to respond.

The defendant also has yet to respond to CREW's request for expedition, a response that is overdue whether the 10-day response time is calculated from August 23, the date CREW first submitted its FOIA request, or October 3, the date CREW provided government counsel with a copy of the request. Under these circumstances, CREW's claim is ripe for adjudication and CREW should be deemed to have constructively exhausted all applicable administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C).

The significant attention paid to Secretary Mnuchin's travel, which prompted the Treasury Department to respond on multiple occasions with addition details about the

---

[11] *See* fn. 4 supra. Indeed, many of those news articles contain a link to CREW's request.

Secretary's travel,[12] amplifies defendant's undue delay in responding to CREW's request, as does the investigation the inspector general launched based on documents provided, on request, from the Office of General Counsel. IG Memo, at 1. The agency's response to media inquiries and, most significantly, the inquiry conducted by the inspector general all flowed from access to the basic facts concerning Secretary Mnuchin's travel. The IG Memo rests on the nine requests to use government aircraft made on behalf of Secretary Mnuchin – the very information CREW seeks through its August 23 FOIA request. All this illustrates that the Treasury Department has ready access to, and most likely already has assembled, the documents responsive to CREW's request, further underlining why the agency's unexcused delay in responding merits the requested injunctive relief.

### B. CREW Will Suffer Irreparable Injury Absent the Requested Injunctive Relief.

Unless the Treasury Department's unlawful failure to comply with its statutory obligation to process CREW's FOIA request on an expedited basis is immediately enjoined, CREW will suffer irreparable injury. The very nature of the right CREW seeks to vindicate in this action – expedited processing – depends upon timeliness, because "stale information is of little value." *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988); *EPIC I*, 416 F. Supp. 2d at 40-41; *see also August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) ("[T]he statutory goals [of the FOIA] – efficient, *prompt*, and full disclosure of information – can be frustrated by agency actions that operate to delay the ultimate resolution of the disclosure request." (emphasis in original) (internal quotation marks and citations omitted). Quite simply, "failure to process

---

[12] *See, e.g.*, Alan Rappeport, Mnuchin Inquired About Using Government Plane for His Honeymoon, *New York Times*, Sept. 13, 2017, *available at* https://www.nytimes/com/ 2017/0913/us/politics/steven-mnuchin-louise-linton-government-plane-europe.html.

FOIA requests in a timely fashion is 'tantamount to denial.'" *Washington Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 74 (D.D.C. 2006) (quoting H.R. Rep. No. 93-876, at 6 (1974)). *See also Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 44 (D.D.C. 2014) ("*EPIC II*").

This district has recognized explicitly that the requisite injury is present, and preliminary injunctive relief is appropriate, in cases like this one where expedited FOIA processing is at issue and time therefore is of the essence:

> As the Supreme Court has made clear, public awareness of the government's actions is 'a structural necessity in a real democracy.' Not only is public awareness a necessity, but so too is *timely* public awareness. For this reason, Congress recognized that delay in complying with FOIA requests is 'tantamount to denial.' The D.C. Circuit likewise acknowledged that 'stale information is of little value.' The 1966 amendments to FOIA creating the statutory right to expedition in certain cases 'underlined Congress' recognition of the value in hastening release of certain information.' As [plaintiff] correctly notes, 'the loss of that "value" constitutes a cognizable harm.' As time is necessarily of the essence in cases like this, such harm will likely be irreparable.

*EPIC I*, 116 F. Supp. 2d at 40-41 (emphasis in original; citations omitted). Under the statutory scheme Congress established in the FOIA, timing clearly is a critical component of expedited processing, and unless the Treasury Department is ordered to process CREW's request immediately and release all responsive documents, CREW's right to expedition under the FOIA will be irretrievably lost.

In addition to the loss of its clearly established statutory right to expedition, further delay will irreparably harm CREW's ability, and that of the public, to obtain in a timely fashion information bearing directly on the integrity and actions of Secretary Mnuchin. The Supreme Court has long recognized our democracy's interest in "the uninhibited, robust, and wide-open debate about matters of public importance that secures an informed citizenry." *Cornelius v.*

*NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 815 (1985) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (internal quotation marks omitted)); *see also Bd. of Educ. v. Pico*, 457 U.S. 853, 876 (1982) ("[T]he Constitution presupposes the existence of an informed citizenry prepared to participate in governmental affairs.").

If there is to be meaningful public discussion about Secretary Mnuchin's use of non-commercial flights for official travel and the extent to which it complied with governing protocols and rules, such examination "cannot be based solely upon information that the Administration voluntarily chooses to disseminate." *EPIC I*, 416 F. Supp. 2d at 41 n.9. Indeed, the public oversight mechanism the FOIA affords plays a central part in open and democratic debate on critical policy issues. Similarly, meaningful public discussion about the tax policy that Secretary Mnuchin is spearheading depends on a full public record about his actions as secretary. As the Supreme Court has observed, the FOIA is "a means for citizens to know what the Government is up to. The phrase should not be dismissed as a convenient formalism. *It defines a structural necessity in a real democracy*." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171-72 (2004) (emphasis added; citation and internal quotation marks omitted). *See also NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Housing & Urban Dev.*, 2007 U.S. Dist. LEXIS 88027, at *19 (S.D.N.Y. Nov. 30, 2007) (FOIA's expedited processing procedures "are statutorily imposed and . . . are important to insuring that the public receive time-sensitive information without delay") (citation omitted).

Delay in the processing of FOIA requests "may well result in disclosing the relevant documents after the need for them in the formulation of national . . . policy has been overtaken by events." *Natural Resources Def. Council v. Dep't of Energy*, 191 F. Supp. 2d 41, 43 (D.D.C.

2002). Where, as here, time is of the essence, CREW and the public will suffer irreparable injury unless the Court acts now.

### C.     Injunctive Relief Will Not Burden the Interests of Others.

While CREW will suffer irreparably injury absent the requested injunctive relief, the Treasury Department will bear no undue burden by a requirement that it merely comply with the law. The immediate relief CREW seeks will require nothing more of the government than what federal law already mandates:  the expedited processing of CREW's FOIA request. Nor will the requested relief burden the interests of others beyond that foreseen by Congress. In providing for expedited processing of qualifying requests, Congress intended that such requests take precedence over those that do not qualify for expedited treatment. Indeed, that burden essentially is eliminated here, where the agency has had months to process the request and presumably already has assembled the responsive documents for the IG inquiry, which specifically references the underlying paperwork submitted to justify Secretary Mnuchin's travel requests.

### D.     The Public Interest Favors the Requested Relief.

The fourth factor in the preliminary injunction analysis weighs heavily in favor of granting the requested injunctive relief. The courts have long recognized that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977); *Wash. Post*, 459 F. Supp. 2d at 76; *EPIC I*, 416 F. Supp. 2d at 42. Moreover, the FOIA starts from the premise that the public has an overwhelming interest in the release of information that "shed[s] light on an agency's performance of its statutory duties." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). Here the public interest weighs in favor of a preliminary injunction because "[t]here is public benefit in the release of information that adds to

citizens' knowledge" of government activities. *Ctr. to Prevent Handgun Violence v. Dep't of the Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999). That benefit is heightened here where the requested documents concern the conduct of the Treasury Department's head, who has been directly implicated in the unfolding scandal about the abuse by top Trump administration officials of government and private aircraft for official business.

### E. A Preliminary Injunction is the Most Appropriate Relief to Compel the Treasury Department to Comply With its Statutory Obligations.

Finally, only a preliminary injunction will remedy the government's failure to act on a well-founded request for expedited processing. Following this logic, numerous courts have issued preliminary injunctions where agencies have failed to expedite FOIA requests. *See Wash. Post*, 459 F. Supp. 2d at 67; *EPIC I*, 416 F. Supp. 2d at 35; *ACLU v. Dep't of Defense*, 339 F. Supp. 2d 501, 503 (S.D.N.Y. 2004); *Aguilera v. FBI*, 941 F. Supp. 144, 152-53 (D.D.C. 1996).

The appropriate form of relief is no more than ordering the Treasury Department to follow the statute and its own regulations. While the Treasury Department may claim it is doing just that, the amount of time it has consumed belies any such claim. The agency's unsubstantiated and unwarranted delay raises a question about its good faith in complying with its obligations under the FOIA. While the agency may be seeking to avoid or delay the revelation of embarrassing information, such a course would be a clear abuse of the FOIA process.

Recognizing the "widespread and exceptional" public interest in the records at issue here, and given that the FOIA "envisions the courts playing an important role in guaranteeing that agencies comply with its terms," *EPIC I*, 416 F. Supp. 2d at 37, CREW respectfully requests that the Court direct defendant Treasury Department to complete the processing of CREW's request and produce or identify all responsive records within one week of the issuance of its order.

## CONCLUSION

For the foregoing reasons, CREW's motion for a preliminary injunction should be granted.

Respectfully submitted,

*/s/ Anne L. Weismann*
Anne L. Weismann
(D.C. Bar No. 298190)
Adam J. Rappaport
(D.C. Bar No. 479866)
Citizens for Responsibility and Ethics
    in Washington
455 Massachusetts Ave., N.W.,
Washington, D.C. 20001
Phone: (202) 408-5565
aweismann@citizensforethics.org

Dated: October 26, 2017            *Attorneys for Plaintiff*