UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.: 17-1855 RCL |
| U.S. DEPARTMENT OF THE TREASURY, | ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff Citizens for Responsibility and Ethics in Washington ("Plaintiff") seeks the extraordinary remedy of a preliminary injunction ordering Defendant, the U.S. Department of the Treasury ("Treasury"), to complete the expedited processing of Plaintiff's request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and to produce all responsive records to Plaintiff within one week of the date of the Court's order on its motion. Plaintiff's request for relief is not preliminary in any sense, but rather is an attempt to use as a scheduling tool a procedural mechanism intended only to provide emergency relief, and it is wholly without merit.

First, Plaintiff has not established that it is likely to succeed on the merits of its claims. Even if Plaintiff were correct that its request is entitled to expedited processing, the plain language of FOIA's expedited processing provision requires only that an agency process an expedited FOIA request "as soon as practicable" and imposes no time limit on such processing.

Second, Plaintiff has not established that it will suffer irreparable harm in the absence of an injunction. The Department has begun processing Plaintiff's FOIA request. Plaintiff has pointed to no imminently approaching deadline or event that requires emergency relief. Nor does it adequately explain why or how its ability to contribute to public debate on the subject of its FOIA request will be irreparably harmed if it does not receive all responsive, non-exempt material within one week of the Court's order.  Moreover, Plaintiff's claim that anything less than the immediate release of documents will impede its ability to examine Secretary Mnuchin's travel is undermined by the October 4, 2017 Memorandum from OIG Counsel Rich Delmar to Treasury Inspector General Eric Thorson regarding Secretary Mnuchin's use of government aircraft ("OIG Memo") on the precise subject it seeks— Secretary Mnuchin's use of government aircraft, including on the August 21, 2017 trip to Kentucky (attached as Ex. A).  The report is available on the world wide web and has been the subject of past media coverage. *See*, *e.g.*,  https://www.politico.com/story/2017/10/05/steven-mnuchin-plane-travel-243513 (last accessed Nov. 2, 2017) (providing a link to Ex. A).

Third, the balance of equities and public interest weigh against an injunction here. Forcing Treasury to process Plaintiff's FOIA request on an arbitrary and infeasible timeline, rather than as quickly as practicable as required by the statute, would upset Congress's careful balance under FOIA, disadvantage numerous other requesters whose FOIA requests were submitted prior to Plaintiff's request, and risk inadvertent disclosure of properly exempt material. Notably, Plaintiff's analysis of the public interest takes into account only the purported public interest in the records Plaintiff has requested in this case, and fails to consider the public interest in the many other FOIA requests Treasury is processing, including several

requests for similar materials that were submitted prior to Plaintiff's, requests to which

Treasury has afforded expedited processing, and other FOIA matters currently in litigation.[1]

      Finally, the relief Plaintiff is requesting is the ultimate relief it seeks by way of this

lawsuit—release of the records requested—not "preliminary" relief designed to protect the

status quo. It is thus inappropriate and premature at this early juncture. Plaintiff seeks to use

the preliminary injunction provisions of Federal Rule of Civil Procedure 65, which are

intended to provide a shield against imminent injury while a court considers the merits of a

dispute, as a means of artificially accelerating the proceedings in this case. The Court should

reject this unfounded and improper tactic.

      For these reasons, and those set forth at length below, Plaintiff's motion for a

preliminary injunction should be denied.

## BACKGROUND

### I.     RELEVANT STATUTORY AND REGULATORY FRAMEWORK

      Agencies ordinarily process FOIA requests for agency records on a first-in, first-out

basis. In 1996, Congress amended FOIA to provide for "expedited processing" of certain

categories of requests. *See* Electronic Freedom of Information Amendments of 1996

("EFOIA"), Pub. L. No. 104-231, § 8 (codified at 5 U.S.C. § 552(a)(6)(E)). Expedition, when

granted, entitles requesters to move immediately to the front of an agency processing queue,

ahead of requests filed previously by other persons, but at the end of the queue of other

outstanding requests that have previously been granted expedited processing. The statute

provides that "[a]n agency shall process as soon as practicable any request for records to which

---

[1] If Treasury's counsel becomes aware of documents responsive to Plaintiff's request being made available in a public reading room, Treasury will so notify counsel for Plaintiff.

the agency has granted expedition." 5 U.S.C. § 552(a)(6)(E)(iii). In addition to expedited

processing, Congress also accelerated litigation involving all FOIA claims. See 5 U.S.C. §

552(a)(4)(C) (providing that government defendants have 30 days in which to answer a FOIA

circumstances that track the statute. 31 C.F.R. § 1.5. Within ten calendar days of the date of a

request for expedited processing, the appropriate Treasury component must "decide whether to

grant or deny the request" and notify the requester of the decision. Id. § 1.5(e)(4); see also 5

U.S.C. § 552(a)(6)(E)(ii)(I) (requiring notice of decision within ten days of request). If the

request is granted, "[r]ecords will be processed as soon as practicable." Id. § 1.5(e)(2). If the

request is denied, "[a]n appeal determination regarding expedited processing shall be made,

and the requester notified, within 10 days (excluding Saturdays, Sundays, and legal public

holidays) from the date of receipt of the appeal." Id. § 1.5(e)(6); see also 5 U.S.C. §

552(a)(6)(E)(ii)(II) (requiring "expeditious consideration of administrative appeals of such

determinations of whether to provide expedited processing.").

## II.     PLAINTIFF'S FOIA REQUEST AND THE INSTANT LITIGATION

CREW's FOIA request is dated August 23, 2017, and seeks two categories of records:

(1) copies of all records concerning authorization for and the costs of Secretary Mnuchin's use

of a government plane for his August 21 trip to Lexington, Kentucky; and (2) copies of all

records concerning authorization for and the costs of the Secretary's use of a government

plane for any purpose since his appointment as Treasury secretary. CREW's FOIA request

included a request for expedition "because of the urgency to inform the American public about

a matter of current exigency."

While its request is dated August 23, 2017, and was purportedly transmitted to

Treasury via fax, Treasury's FOIA office has no record of receiving a faxed transmission from

Plaintiff around this date, and was unable to locate a faxed copy of the request after the complaint was filed. As discussed in Defendant's Answer (ECF No. 9), Treasury first obtained a copy of the FOIA request on October 3, 2017, via email from Plaintiff's counsel. Nevertheless, in the interest of efficiently processing CREW's request, Treasury agreed to respond to and process the version of the August 23 request that was provided informally by counsel for Plaintiff on October 3, and did not require Plaintiff to re-submit the request through the process required by Treasury's FOIA regulations.

Plaintiff filed the instant lawsuit on September 11, 2017. See Pl.'s Compl. (ECF No. 1). Defendant filed an Answer to Plaintiff's Complaint on October 19, 2017. See Def.'s Answer (ECF No. 9). Before the Court even had an opportunity to schedule a joint status report, Plaintiff filed its motion for a preliminary injunction seeking the release of all responsive records within one week of the date of the Court's order on its motion. Pl.'s Mot. for a Prelim. Inj. (Oct. 26, 2017) (ECF No. 10).

On October 31, 2017, Treasury sent to CREW, via email, an acknowledgement letter in response to CREW's FOIA request (attached as Ex. B). The letter states, in part, that Treasury "has initiated a search for responsive records to your request. We will make every effort to provide you with a timely response; however, please be advised that unusual circumstances exist regarding the search for and review of potentially responsive records. The unusual circumstances are due to a requirement for consultation between two or more Federal offices; therefore, an additional processing extension of (10) days is required to process your request." The October 31 letter denied CREW's request for expedited processing, on the basis that it failed to "adequately demonstrate the urgency to inform the public about an 'actual or alleged Federal Government activity.'" Ex. B at 2.

## **ARGUMENT**

"Preliminary injunctive relief, of the kind requested here, is an 'extraordinary and drastic remedy' that is 'never awarded as of right.'" *Newark Pre-School Council, Inc. v. U.S. Dep't of Health & Human Svcs.*, 201 F. Supp. 3d 72, 77 (D.D.C. 2016) (quoting *Munaf v. Green*, 553 U.S. 674, 689-90 (2008)). It "should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).

A party moving for a preliminary injunction must demonstrate "(1) that it 'is likely to succeed on the merits'; (2) that it 'is likely to suffer irreparable harm in the absence of preliminary relief'; (3) 'that the balance of equities tips in [its] favor'; and (4) 'that an injunction is in the public interest.'" *Newark Pre-School Council*, 201 F. Supp. 3d at 77 (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The D.C. Circuit has not yet definitively decided whether *Winter* abrogates the "sliding scale" approach for assessing these four factors previously applied in this Circuit. *League of Women Voters of United States v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016) ("[T]his case presents no occasion for the court to decide whether the 'sliding scale' approach remains valid after *Winter*."); *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011). The appellate court has nevertheless indicated that it considers *Winter* "at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction,'" regardless of whether a "sliding-scale analysis" is used to weigh the four factors. Id. at 393 (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring)); *see Hubbard v. United States*, 496 F. Supp. 2d 194, 198 (D.D.C. 2007) ("absent a substantial indication of likely success on the merits, there would be no justification for the [C]ourt's intrusion into the ordinary processes of

administration and judicial review.") (citation omitted). This Circuit has also emphasized that a

showing of irreparable harm is an "independent prerequisite" for a preliminary injunction.

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

      "The usual role of a preliminary injunction is to preserve the status quo pending the

outcome of litigation." *Cobell v. Kempthorne*, 455 F.3d 301, 314 (D.C. Cir. 2006) (citation

omitted). Therefore, when, as here, a movant seeks mandatory injunctive relief, *i.e.*, an

injunction that "would alter, rather than preserve, the *status quo* by commanding some positive

act" he or she "must meet a higher standard than in the ordinary case by showing clearly that he

or she is entitled to relief or that extreme or very serious damage will result from the denial of

the injunction." *Newark Pre-School Council*, 201 F. Supp. 3d at 78 (citation omitted). "A

district court should not issue a mandatory preliminary injunction unless the facts and law clearly

favor the moving party." *Nat'l Conference on Ministry to Armed Forces v. James*, 278 F. Supp.

2d 37, 43 (D.D.C. 2003) (citation omitted).

      As explained further below, Plaintiff has not satisfied the four factors or the heightened

standard for mandatory injunctions. Its motion for a preliminary injunction should therefore be

denied.

## I.    PLAINTIFF CANNOT ESTABLISH IT IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM

      Plaintiff cannot demonstrate a clear likelihood of success on the merits of its claim that

Defendant violated FOIA by failing to respond to its FOIA request within 20 business days of

the request, and by failing to process its request for expedition within 10 days. Pl.'s Mem. in

Support of Pl.'s Mot. for a Prelim. Inj. ("Pl.'s Mem.") at 8-9 (ECF No. 10-1). Courts in this

district routinely deny requests for preliminary, mandatory injunctive relief in FOIA cases. *See*,

*e.g.*, *Progress v. Consumer Fin. Prot. Bureau*, No. 17-686, 2017 WL 1750263 (D.D.C. May 4,

2017) (denying PI to expedite processing where requester failed to show a likelihood of success

on the merits and irreparable harm); *Wadelton v. Dep't of State*, 941 F. Supp. 2d 120, 124

(D.D.C. 2013) (denying PI to expedite processing where requester failed to meet all four PI

prongs); *Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 279 (D.D.C. 2012) (denying PI to

expedite processing where agency stated request is already at the top of the queue and requester

failed to meet other PI prongs); *Elec. Privacy Info. Ctr. v. Dep't of Justice*, No. 03-2078, slip op.

at 1, (D.D.C. Oct. 20, 2003) (attached as Ex. C) (denying, *sua sponte*, a PI request "'enjoining

defendant Department of Justice from continuing to deny plaintiff expedited processing of

plaintiff's Freedom of Information Act request'" because such relief "would effectively grant all

the relief plaintiff seeks" and was in the nature of a request for mandamus), *vacated as moot*

2004 WL 2713119 (D.C. Cir. 2004); *Al-Fayed v. CIA*, No. 00-20292, 2000 WL 34342564, *6

(D.D.C. Sept. 20, 2000) (finding that "upon consideration of the parties' arguments, the statutory

and regulatory context, and the applicable case law," emergency relief was not warranted despite

the agency's delay in responding to FOIA requests); *Judicial Watch v. Dep't of Justice*, No. 00-

1396, slip op. at 1, (D.D.C., June 27, 2000) (attached as Ex. D) (denying plaintiff's "emergency

motion for expedited treatment" to "compel defendant to respond to plaintiff's Freedom of

Information Act request").

As in those cases, Plaintiff's argument that it is entitled to a preliminary injunction

ordering documents released within a set period of time is predicated on the erroneous assertion

that FOIA requires an agency to complete its processing within a specific timeframe, namely less

than 20 business days of the request. The statute, however, does not impose such a requirement.

Instead, the statute directs agencies to "determine within 20 days . . . whether to comply" with

the request. 5 U.S.C. § 552(a)(6)(A)(i); *see also id.* § 552 (a)(6)(B)(i) (permitting the agency to

extend the time limit by up to ten working days "[i]n unusual circumstances"). The D.C. Circuit

has made clear that to satisfy this provision, the agency "need not actually produce the

documents" but should "at least indicate . . . the scope of the documents it will produce and the

exemptions it will claim with respect to any withheld documents." *Citizens for Ethics and*

*Responsibility in Wash. v. Federal Election Comm'n*, 711 F.3d 180, 182-83 (D.C. Cir. 2013)

("*CREW*"). If the agency makes such a determination within twenty working days, the requester

must pursue an administrative appeal before seeking judicial review. *See, e.g.*, *Hidalgo v. FBI*,

344 F.3d 1256, 1258 (D.C. Cir. 2003). If an agency does not make a determination within that

time, "the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement

to keep cases from getting into court." *CREW*, 711 F.3d at 189. The requesting party is instead

"deemed to have exhausted his administrative remedies" and can file suit in a federal district

court without first pursuing an administrative appeal. 5 U.S.C. § 552(a)(6)(C)(i). After suit is

filed, the district court can "allow the agency additional time to complete its review of records,"

so long as "the Government can show exceptional circumstances exist and that the agency is

exercising due diligence in responding to the request." *Id.* § 552(a)(6)(C)(i). An agency complies

with FOIA simply by making "a good faith effort . . . to comply with all lawful demands under

[FOIA] in as short a time as is possible by assigning all requests on a first-in, first-out basis."

*Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976). The

statute's determination deadline thus provides no basis for a preliminary injunction requiring

production by a date certain.[2]

---

[2] Standard FOIA requests are subject to the timeframe set forth in 5 U.S.C. § 552(a)(6)(A)(i), which provides that an agency "shall determine within 20 working days (excepting Saturdays, Sundays, and legal public holidays) after receipt of the request whether to comply with the request."

Plaintiff relies heavily on a single, non-precedential, contrary decision, *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30 (D.D.C. 2006) (Kennedy, J.) ("*EPIC I*"), in which a preliminary injunction was granted in the FOIA expedited processing context requiring the agency to produce or identify all responsive documents within 20 days. As is plain from the above discussion, *EPIC I* is in tension with the FOIA statutory and regulatory framework and the general principles governing issuance of preliminary relief, and was issued several years prior to the D.C. Circuit's decision in *CREW*. Moreover, the preliminary injunction entered in *EPIC I* was later modified upon reconsideration to provide the government considerably longer to process responsive documents, following a factual submission by the government regarding its processing capacity. *See EPIC I*, slip op., No. 06-0096 (D.D.C. Mar. 24, 2006) (attached as Ex. E) (granting in part the government's expedited motion for relief from the February 16, 2006 Order and extending the deadline for several DOJ components to process plaintiff's FOIA request by 60 or 120 additional days, respectively).

Indeed, in two more recent decisions, *EPIC II* and *Daily Caller*, this Court has denied, in strong terms, requests for preliminary injunctions in circumstances similar to those in *EPIC I*. Both cases squarely rejected the plaintiff's contention that an agency's failure to produce records responsive to a FOIA request within 20 days entitles a requester to a court order requiring the immediate production of the records sought. *See Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 44 (D.D.C. 2014)  ("*EPIC II*"); *see also Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 11 (D.D.C. 2015).  *EPIC II* explained that the plaintiff was making a "tautological argument" that because, in its view, an agency "must make a determination regarding a typical, non-expedited FOIA request within 20 days or suffer the consequence of a court order requiring production of the documents," an agency's failure to make a determination within 20 days means

the agency did not expedite the FOIA request. *EPIC II*, 15 F. Supp. 3d at 44. The *EPIC II* court went on to explain that the D.C. Circuit's decision in *CREW* established that such a circular argument was erroneous. *Id.*; *see Daily Caller*, 152 F. Supp. 3d at 10 (examining and relying on *CREW*). And both decisions held that *EPIC I* was distinguishable because, *inter alia*, it was decided without the benefit of the D.C. Circuit's ruling in *CREW*, *see EPIC II*, 15 F. Supp. 3d at 42, and because the agency in *EPIC I* initially failed to present evidence showing disclosure was impracticable, *see Daily Caller*, 152 F. Supp. 3d at 11.

In any event, the *EPIC I* court emphasized that "[t]he presumption of agency delay raised by failing to respond to an expedited request within twenty days is certainly rebuttable if the agency presents credible evidence that disclosure within such time period is truly not practicable." *EPIC I*, 416 F. Supp. 2d at 39. That is certainly the case here. While Defendant has not completed its initial search for responsive records, it is clear from the OIG Memo that these records include pre-decisional memoranda sent by Treasury to the Executive Office of the President. Defendant will need time to review those memoranda (and any other potentially exempt materials) for application of relevant privileges, including the deliberative process privilege, and will also need time to confer with the Executive Office of the President so that it can review for its own equities and privileges. It is unrealistic for such review to take place within the expedited time-table demanded by Plaintiff.

Treasury has acknowledged and begun processing Plaintiff's FOIA request, and expects to be able to provide Plaintiff and the Court with an update on the status of the request, including an estimated date on which productions will begin, in the event a joint status report is ordered. Plaintiff, on the other hand, has provided no evidence or argument (other than unfounded allegations) that it is practicable for Defendant to complete the processing of its FOIA request

within one week, as it requests, or that Defendant is not in fact processing its request as soon as is practicable.

## II.   PLAINTIFF HAS FAILED TO ESTABLISH IT WILL SUFFER ANY IRREPARABLE HARM ABSENT A MANDATORY, EMERGENCY INJUNCTION

"[T]he basis of injunctive relief in the federal courts" has "always" been irreparable harm. *Newark Pre-School Council*, 201 F. Supp. 3d at 78 (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). "Indeed, if a court concludes that a movant has not demonstrated irreparable harm, it need not even consider the remaining factors." *Id.* (quoting *CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995)).

The D.C. Circuit "has set a high standard for irreparable injury." *In re Navy Chaplaincy*, 534 F.3d 756, 766 (D.C. Cir. 2008) (citation omitted). The party seeking injunctive relief must show that its injury is "both certain and great," and that it is "actual and not theoretical." *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam). It is a "well known and indisputable principle[]" that "unsubstantiated and speculative" harm cannot constitute "irreparable harm" sufficient to justify injunctive relief. *Id.* Moreover, the movant "'must demonstrate a causal connection between the alleged harm and the actions to be enjoined; a preliminary injunction will not issue unless it will remedy the alleged injuries.'" *Navistar, Inc. v. U.S. EPA*, No. 11-449, 2011 WL 3743732, *2 (D.D.C. Aug. 25, 2011) (quoting *Hunter Group, Inc. v. Smith*, 164 F.3d 624 (4th Cir. 1998)); *see also id.* at *2 (citing *Faulkner v. Jones*, 10 F.3d 226, 235-36 (4th Cir. 1993) (Hamilton, J., dissenting) ("[A]ny inquiry into the irreparable harm resulting from the denial of interim relief must necessarily begin with an analysis of the degree to which that particular relief remedies the alleged injuries.")). Because Plaintiff has not made the requisite showing of a nonspeculative injury that could be remedied by preliminary injunctive

relief, its application should also be denied on this basis alone. *See Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, 639 F.3d 1078, 1088 (D.C. Cir. 2011).

Plaintiff's attempts to establish irreparable harm are entirely conclusory and speculative. First, Plaintiff asserts that "further delay will irreparably harm CREW's ability, and that of the public, to obtain in a timely fashion information bearing directly on the integrity and actions of Secretary Mnuchin." Pl. Mem. at 11. Plaintiff's subjective opinion of what constitutes timely processing, however, "is not, and cannot be, the standard that governs the Court's evaluation of irreparable harm." *EPIC II*, 15 F. Supp. 3d at 44; *Navistar*, 2011 WL 3743732, at *5 (plaintiff's irreparable harm argument suffered from same weakness as likelihood of success factor, *i.e.*, it had not shown that the agency violated FOIA by taking longer than 20 days to respond and failed to show "why it is entitled to immediate production of requested documents—a result they could not receive under the provisions of the FOIA."). And Plaintiff offers nothing more than bald assertions and unfounded allegations that Defendant is not processing its FOIA request as soon as practicable. Indeed, as explained above, Treasury has already begun processing Plaintiff's request.

Plaintiff will not be irreparably harmed by the absence of an injunction. Plaintiff has failed to point to any imminent deadline requiring this emergency, mandatory injunction. In cases like this one where the plaintiff has not provided evidence of a looming event necessitating the immediate release of information, numerous courts have found similar conclusory claims of harm to be lacking.[3] *See Daily Caller*, 152 F. Supp. 3d at 13 (rejecting claim that delay in

---

[3] For this reason, the cases on which Plaintiff relies are distinguishable. In *Washington Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61 (D.D.C. 2006), the court found that the plaintiff established irreparable injury where it showed that the requested information, which the agency declined to process at all, was of vital public interest for the impending mid-term election. 459 F. Supp. 2d at 75. And in *Aguilera v. FBI*, 941 F. Supp. 144 (D.D.C. 1996), the

responding to plaintiff's FOIA request irreparably injured its ability to provide the public with its

analysis and reporting of Secretary Clinton's use of a private email server during her time at the

State Department); *EPIC II*, 15 F. Supp. 3d at 45 (finding to be speculative plaintiff's claim that

delay in processing its FOIA request would "irreparably harm [its] ability and the ability of the

public to 'obtain in a timely fashion information that is vital to the current and ongoing debate

surrounding the scope of the NSA's surveillance programs'");[4] *Al-Fayed v. CIA*, No. 00-20292,

2000 WL 34342564, *5 (D.D.C. Sept. 20, 2000) (finding plaintiff's claim of irreparable harm to

"their ability to engage in informed discussion and debate on the issue of government

misconduct . . ." was conclusory and did not explain "why th[e] information will not retain its

value if procured through the normal FOIA process"); *Long v. Dep't of Homeland Sec.*, 436 F.

Supp. 2d 38, 44 (D.D.C. 2006) (finding plaintiffs did not show irreparable harm to their "ability

to timely inform the public about the government's treatment of aliens with drug possession

convictions" and "participate in the debate . . . over immigration policy" where it "failed to

identify a time frame in which the requested information would no longer be valuable").

---

plaintiff established that the agency's proposed 7-year timeline for responding to the plaintiff's
FOIA request would cause irreparable harm where the plaintiff, who was facing murder charges,
requested the documents in preparation for an upcoming suppression hearing. 941 F. Supp. at
152.  Plaintiff has made no such showing of a concrete, imminent need here. The remainder of
the cases cited by Plaintiff in support of its irreparable harm argument do not involve motions for
preliminary injunction and, in some cases, FOIA itself, and are thus of little utility to the Court's
assessment of the extraordinary relief sought.

[4] Surprisingly, Plaintiff cites *EPIC II* in support of its irreparable injury argument. Pl.'s
Mem. at 11. Yet *EPIC II* rejects almost all of the same arguments raised by Plaintiff in this
matter. In fact, the plaintiff in that case had a marginally stronger argument with respect to
irreparable harm as it had at least identified potential future legislation pertaining to the topic of
its FOIA requests. *EPIC II*, 15 F. Supp. 3d at 46. Nonetheless, the *EPIC II* court found that
where there was no "looming deadline" or other evidence suggesting "imminent action," *id.*, the
plaintiff's claim of the likelihood of a bill being passed in the near future was speculative, *id.* at
45.

Although Plaintiff's desire to receive a final response to its FOIA request immediately "is understandable, that desire without more, is insufficient to constitute irreparable harm necessary to justify the extraordinary relief requested here." *Judicial Watch*, 514 F. Supp. 2d at 10.

Additionally, the October 4, 2017 OIG Memorandum, cited by Plaintiff in its brief, was based on a detailed review of the very documents that Plaintiff seeks, and concluded that there was "no violation of law in these requests and uses" for military aircraft, the very subject of Plaintiff's request. Ex. A at 20. The investigation by the Office of Inspector General and the OIG Memo's conclusion undermine Plaintiff's claim that it will suffer irreparable harm if not provided with the requested documents on an expedited timetable.[5]

Moreover, given the fact that Plaintiff cannot now show with certainty what non-exempt information it may eventually receive as a result of the completed processing of its FOIA request, Plaintiff cannot meet its burden to establish that it will be irreparably harmed if it fails to receive that information immediately. Plaintiff's irreparable harm argument "ignores the well-established statutory FOIA process," which permits Defendant to "withhold certain requested documents and to engage in subsequent litigation over them, without regard to the resulting production delay." *EPIC II*, 15 F. Supp. 3d at 46. Thus, Plaintiff cannot establish that, even its request were fully processed its request in accordance with the timelines it argues should apply,

---

[5] Plaintiff's reference to an October 11, 2017 CNN report that the IG was "launching a second investigation into Steven Mnuchin's government travels" by the Inspector General is erroneous. Pl. Mem. at 5-6. On October 13, 2017, OIG Counsel Rich Delmar merely issued a correction related to one of the trips discussed in the October 4 memorandum (attached as Ex. F). This correction did not change the conclusion of Mr. Delmar's October 4 memorandum that the Secretary's travel activity was consistent with applicable law, and we are aware of no currently pending investigations by the Treasury Office of Inspector General regarding Secretary Mnuchin's travel.

it would receive all of the information it requests, or even obtain a favorable final resolution of any dispute over information withheld by the agency.

Further, the Court should not "engage in rank speculation" to conclude that any nonexempt responsive information Defendant possesses will be of value to Plaintiff and thus that Plaintiff is irreparably harmed absent an order requiring immediate disclosure. *See Elec. Frontier Found. v. Dep't of Justice*, No. 06-1773, slip op. at 11 (D.D.C. Sept. 27, 2007) (attached as Ex. G) (finding no irreparable injury where "the Court would have to engage in rank speculation to conclude that the information possessed by the FBI is of value to the EFF and to assess the extent to which the plaintiff may be harmed due to the FBI's unavoidable delay"). Here, the facts of Secretary Mnuchin's travel are publically known, and the agency's Inspector General has published a report concluding that no violation of law occurred. Plaintiff's assertion that anything in the documents it requests would add meaningfully to the public understanding of this issue amounts to mere speculation.

For these reasons, Plaintiff makes no showing of irreparable harm and has accordingly demonstrated no reason for the Court to invoke its emergency powers.

### III.    THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST WEIGH AGAINST A MANDATORY EMERGENCY INJUNCTION

Along with harm to the plaintiff, the Court must "consider the effect on each party of the granting or withholding of the requested relief," as well as "the public consequences of employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. In this case, the balance of equities and the public's interest weigh in favor of denying the requested injunction.

Contrary to Plaintiff's conclusory claims, the mandatory injunction it seeks would unduly burden Defendant. Plaintiff's effort to impose an arbitrary, artificial timeline on Defendant ignores the fact that an agency has a "responsibility" when processing FOIA requests to

"safeguard[] potentially sensitive information." *Daily Caller*, 152 F. Supp. 3d at 14 (citing *United Techs. Corp. v. U.S. Dep't of Defense*, 601 F.3d 557, 559 (D.C. Cir. 2010) (FOIA "represents a balance [of] the public's interest in governmental transparency against legitimate governmental and private interests that could be harmed by release of certain types of information.")). Accordingly, Treasury's processing of a request like Plaintiff's is necessarily multilayered and thorough, and includes collecting potentially responsive materials, reviewing responsive materials for claims of exemption, and consulting with the appropriate Treasury components and other entities with equities in the information at issue prior to releasing any non-exempt, responsive documents. That process simply cannot be completed in the truncated time frame Plaintiff proposes. As the court in *Daily Caller* held, releasing records without sufficient time for processing "raises significant risk of harm to the public and private interests served by the thorough processing of responsive agency records prior to their ultimate production," particularly through "inadvertent disclosure of records properly subject to exemption under FOIA." *Daily Caller*, 152 F. Supp. 3d. at 15.  As previously noted, if counsel for Treasury learn that documents responsive to Plaintiff's request have been processed in response to another request and posted to an electronic reading room, they will notify counsel for Plaintiff.

Plaintiff argues that the injunction requested would also not "burden the interests of others beyond that foreseen by Congress," as "Congress intended requests like Plaintiff's to take precedence over those that do not qualify for expedited treatment." Pl.'s Mem. at 13. In reality, however, Plaintiff's request for relief threatens to compromise the delicate balancing of interests that Congress undertook in enacting FOIA. Importantly, Plaintiff's argument ignores the fact that, more than bypassing the normal course of FOIA litigation, granting Plaintiff's motion for accelerated processing of its request would require that resources be diverted from requests

submitted prior to Plaintiff's, and thereby disadvantage other, similarly situated members of the press or the public who themselves have FOIA requests pending before Treasury (including some requests that have been granted expedited processing and/or that are in litigation), which are also viewed as urgent by the requesters. *EPIC II*, 15 F. Supp. 3d at 47 ("allowing EPIC to jump to the head of the line would upset the agency's processes and be detrimental to the other expedited requesters, some of whom may have even more pressing needs.") (citing *The Nation Magazine v. Dep't of State*, 805 F. Supp. 68, 74 (D.D.C. 1992) (entry of a preliminary injunction expediting a FOIA request over other pending requests "would severely jeopardize the public's interest in an orderly, fair, and efficient administration of [ ] FOIA")).

Weighed against these substantial interests, Plaintiff does little more than assert that Treasury will bear no undue burden under its proposed injunctive relief, and that "burden essentially is eliminated here, where the agency has had months to process the request and presumably already has assembled the responsive documents for the IG inquiry, which specifically references the underlying paperwork submitted to justify Secretary Mnuchin's travel requests." Pl.'s Mem. at 13. Plaintiff, of course, has no basis for its assertions regarding the state of the documents that were provided to the Office of Inspector General. Moreover, as discussed above, any documents already collected by Treasury would still require careful review for materials exempt from disclosure under the FOIA and internal and external consultation, as appropriate.

Further, the mere allegation that the topic pertaining to Plaintiff's FOIA request has received public attention, even if considerable, does not necessarily mean that the public's interest would be served by the Court granting the extraordinary relief Plaintiff requests. *See EPIC II*, 15 F. Supp. 3d at 47-48; *see also Judicial Watch*, 514 F. Supp. 2d at 11. And finally, as

discussed above, the publicly-released October 4, 2017 OIG Memo, which closely analyzed the very issues with respect to which Plaintiff seeks disclosure, undermines Plaintiff's claim of a "heightened benefit" to the public that would justify such extraordinary relief.

## IV.    PLAINTIFF'S REQUESTED MANDATORY, EMERGENCY INJUNCTION IS IMPROPER

Preliminary injunctive relief is not intended to provide plaintiffs with a means to bypass the litigation process and achieve rapid victory, and so a preliminary injunction should not work to give a party essentially the full relief it seeks on the merits. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits."); *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) ("[A] preliminary injunction should not work to give a party essentially the full relief he seeks on the merits."). As Plaintiff has made clear, however, that is what it seeks here: an injunction that the government produce all responsive documents to Plaintiff almost immediately. *E.g.,* Pl.'s Mem. at 14. That is a further indication that Plaintiff's emergency motion is merely a tactic to circumvent the standard litigation process.

In essence, Plaintiff seeks an emergency mandatory injunction as a means of jumping ahead of other FOIA requests -- including requests that have been in litigation longer than this newly-filed case. Not only is this procedure unfair to other FOIA requesters and contrary to the FOIA, but it also results in burdensome and unnecessary motion practice for the parties and the Court.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion for a Preliminary Injunction.

Respectfully submitted,


JESSIE K. LIU, DC Bar #472845
United States Attorney


DANIEL F. VAN HORN, DC Bar #924092
Chief, Civil Division


By: _____ /s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC  20530
(202) 252-2536
mark.nebeker@usdoj.gov

Counsel for the Defendant

Of counsel:

ANDREW STEIN
Attorney-Advisor
Office of the General Counsel
U.S. Department of the Treasury

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that service of the foregoing Defendant's Opposition To Plaintiff's

Motion For A Preliminary Injunction, exhibits, and a proposed order has been made through the

Court's electronic transmission facilities on this 2nd day of November, 2017.


_____/s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC  20530
(202) 252-2536
mark.nebeker@usdoj.gov