**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND | ) | |
| ETHICS IN WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 17-1855 (RCL) |
| | ) | |
| U.S. DEPARTMENT OF THE TREASURY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR
A PRELIMINARY INJUNCTION**

This case concerns a Freedom of Information Act ("FOIA") request filed nearly two and one-half months ago by plaintiff CREW for details about Treasury Secretary Steven Mnuchin's use of non-commercial aircraft to fly for government business at a cost to the taxpayers of tens of thousands of dollars.  CREW's FOIA request garnered significant public attention, as CREW was the first to highlight the fact that Secretary Mnuchin's flight on a military aircraft to Lexington, Kentucky coincided with and may have been motivated by a desire to view the solar eclipse.  Subsequently emerging details have revealed Secretary Mnuchin was not alone in using non-commercial flights, leaving the public with a growing sense that far from draining the so-called "swamp" of Washington, this administration is making Washington more corrupt than ever.

The Treasury Department's absolute intransigence in responding to the FOIA request at issue led CREW to move for a preliminary injunction based on the significant public interest in this matter and its highly time-sensitive nature.  The government has now responded, arguing CREW has failed to meet the requirements for a preliminary

injunction.  Most notable about the government's opposition is not what it includes, but what is excludes, namely any factual support whatsoever.  Unaccompanied by any agency declaration, the government relies solely on cases concluding under the specific facts of those cases preliminary injunctive relief was not warranted.  Here, by contrast, there is no record to explain in any way the Treasury Department's failure – if not outright refusal – to process CREW's request.  Far from showing why the Court should not issue the requested injunction, the government's opposition highlights the need for such relief in the face of an agency that refuses to even acknowledge its responsibilities under the FOIA, much less fulfill them.

      **1.**        **CREW is likely to succeed on the merits of its claims.**

      **a.**        **The government has failed to rebut the presumption it is not processing CREW's request as soon as practicable.**

As CREW demonstrated in its opening brief, the government's failure to comply with its obligations under the FOIA warrants the requested relief.  First, the Treasury Department failed to respond to CREW's request for expedition within the 10-day period the FOIA mandates.  Indeed, as its opposition concedes, the agency responded to this request (with a denial) on October 31, long after CREW filed suit, more than two months after CREW filed its request for expedition, and days after CREW filed its motion for a preliminary injunction.  Second, even putting aside the issue of expedition, the agency failed to make a determination on the request within 20 business days, and to date has yet to make that determination or provide a date certain on when it will do so.  These are undeniable facts supported by the evidence of record that point to one inescapable conclusion:  the Treasury Department has not justified its failure to process CREW's request.

The government attempts to excuse this failure by a contorted construction of its obligations under the FOIA, arguing that because the FOIA does not "require[] an agency to complete its processing within a specific timeframe," it need only make a "good faith effort," citing *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976) ("*Open America*").  D's Opp. at 8, 9.[1]  This argument fundamentally misconstrues the relevant case law and an agency's baseline obligations in responding to a FOIA request.

First, citing *CREW v. Federal Election Comm'n*, 711 F.3d 180 (D.C. Cir. 2013) ("*CREW v. FEC*"), the government attempts to bypass its fundamental statutory obligation to "make a determination," claiming that requirement bears only on the issue of whether a requester has exhausted administrative remedies.  D's Opp. at 9.  But while *CREW v. FEC* presented a jurisdictional question of whether the plaintiff had exhausted administrative remedies, the court's answer to that question interpreted a core responsibility the FOIA imposes on agencies:  making a "determination" within a specified time.  The D.C. Circuit construed this term to require agencies to:

> (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse.

711 F.3d at 188.  Further, while the D.C. Circuit recognized making a determination does not require simultaneous production, it held that the responding agency must, under the FOIA

---

[1] D's Opp. refers herein to Defendant's Opposition to Plaintiff's Motion for a Preliminary Injunction (Dkt. 11).

> make the records 'promptly available,' which depending on
> the circumstances typically would mean *within days or a*
> *few weeks* of a 'determination,' not months or years.

*Id.* (emphasis added).  Thus, by its clear terms, *CREW v. FEC* defines a central obligation

all agencies bear under the FOIA, whether or not they are sued – the obligation to make a

"determination."  A finding that a FOIA requester has exhausted administrative remedies

does not discharge this obligation.  Moreover, at no point did the D.C. Circuit purport to

construe the expedition requirement at issue here, instead focusing exclusively on the 20-

day response period for non-expedited requests.  *Id.* at 189.

Second, the government's reference to the *Open America* decision falls wide of

the mark.  That case interpreted one of the FOIA's "safety valves" of a stay of litigation

for *non-expedited* requests, which applies when, once in litigation, an agency

demonstrates it is facing "exceptional circumstances" and "'exercising due diligence in

responding to the request,'"[2] and needs more time to complete processing the request at

issue.  The *Open America* court found that such a stay is warranted only when the agency

can show it is

> deluged with a volume of requests for information vastly in
> excess of that anticipated by Congress [and] when the
> existing resources are inadequate to deal with the volume
> of such requests within the time limits of [the FOIA].

*Id.* at 616.  Subsequently enacted amendments to the FOIA in 1996 explicitly excluded

from the "exceptional circumstances" safety valve a "delay that results from a predictable

agency workload of requests . . . unless the agency demonstrates reasonable progress in

reducing its backlog of pending requests."  5 U.S.C. § 552(a)(6)(C)(ii).  The government

---

[2] *CREW v. FEC*, 711 F.3d at 283, citing 5 U.S.C. § 552(a)(6)(C)(i); *Open America*, 547
F.2d at 611.

cites this decision here as standing for the proposition it need only show "'a good faith effort . . . by assigning all requests on a first-in, first-out basis.'" D's Opp. at 9, citing *Open. America*, 547 F.2d at 616. But the government has not even moved the Court for an *Open America* stay of this litigation, much less made the requisite factual showing to support such a request.

Moreover, while the Treasury Department's failure to process CREW's request on an expedited (or even non-expedited) basis raises a presumption of non-compliance that is rebuttable, *see Electronic Privacy Information Center v. Dep't of Justice*, 417 F. Supp. 2d 30, 39 (D.D.C. 2006) ("*EPIC I*"), the Treasury Department has offered no facts to rebut this presumption beyond the agency's acknowledgment letter of October 31, 2017.[3] Instead, the agency relies on the unsupported assertions of its counsel. The October 31 letter, far from meeting the agency's burden, states only that the Treasury Department "has initiated a search for responsive records," and claims the existence of "unusual circumstances" because of a need to consult with two or more unidentified offices, but fails to provide a date certain by when the agency will respond. The government's opposition brief attempts to amplify these assertions with the following claims:

- The responsive records "include pre-decisional memoranda sent by Treasury to the Executive Office of the President" ("EOP") (D's Opp. at 11).

- Given the time needed to confer with the EOP, the "expedited time-table demanded by Plaintiff" is "unrealistic" (*id.*).

---

[3] That letter (Exhibit B to D's Opp., Dkt. 11-2) (hereafter "October 31 Letter") was sent months after CREW submitted its FOIA request and after CREW filed its motion for a preliminary injunction.

- The Treasury Department "expects to be able to provide Plaintiff and the Court with an update . . . including an estimated date on which productions will begin, in the event a joint status report is ordered" (*id.*).

Not even one of these assertions, however, is backed up by an agency declaration or any other factual support. Indeed, conspicuously absent from the government's opposition are any facts explaining how the agency is treating CREW's request, including, *inter alia*, whether it is treating the request as simple or complex and on a first-in, first-out basis; any backlog that may exist and, if it does, whether it is due to a "predictable agency workload"; the volume and nature of the responsive documents and the extent to which they are likely to implicate any of the FOIA's nine exemptions; the level of consultation required and with whom; and what the agency has done to date in processing the request. In the absence of these critical facts, the Treasury Department has not satisfied its burden to establish it is processing CREW's request as soon as practicable. *EPIC I*, 416 F. Supp. 2d at 39.

### b. The cases the Treasury Department cites do not support denying the requested injunction here.

The absence of these most basic facts also highlights how this case differs so significantly from the cases on which the government relies. In *Daily Caller v. U.S. Dep't of State*, for example (cited in D's Opp. at 10), the State Department submitted a detailed declaration describing other court orders for which the agency needed significant resources to satisfy, the amount of resources that compliance was consuming, the volume of records at issue in those other cases, and the likelihood that many of the requested records involved both sensitive and personal information requiring "additional evaluation by senior reviewers with specialized expertise and credentials." 152 F. Supp. 3d 1, 4-5 (D.D.C. 2015). The Treasury Department has offered no such details here, leaving the

Court with only the agency's belated acknowledgment letter of October 31, which lacks

any specificity whatsoever.

Similarly, in *Electronic Privacy Information Center v. Dep't of Justice*, 15 F.

Supp. 3d 32 (D.D.C. 2014) ("*EPIC II*"), the agency submitted a declaration explaining

the impracticality of the agency responding to the request at issue within 20 days,

> in light of the 13 expedited FOIA requests the agency is
> already processing; the volume of classified material at
> issue, the need for agency staff to review the material to
> determine, first, if it remains properly classified, and
> second, whether the agency can segregate any non-
> classified material; and the competing national security
> obligations to which the same agency staffers who are
> responsible for gathering and reviewing documents
> responsive to the FOIA Request must attend.

*Id.* at 42.  Moreover, the agency had agreed to expedite review of the plaintiff's FOIA

request.  *Id.* at 43.  Here, by contrast, the Treasury Department has offered no facts

explaining why it cannot process CREW's FOIA request within the FOIA's statutory

time-period and has not agreed to expedite that request.

The government cites to a host of other cases where the courts denied the

requested preliminary injunctive relief, all under circumstances that depart significantly

from those presented here.  In *Wadelton v. Dep't of State* (cited in D's Opp. at 8), the

court concluded there was no "urgency to inform" within the meaning of the agency's

regulations because the existing articles on the topic appeared "on a specialized blog

dedicated to the Foreign Service and are read by several thousand people."  941 F. Supp.

2d 120, 123 (D.D.C. 2013) (citation omitted).  The court contrasted the case before it

with those where "courts have found a 'compelling need' to exist when the subject matter

of the request was central to a pressing issue of the day," *i.e.*, "matters of genuine

widespread public concern." *Id.* Those words describe precisely the subject of CREW's request, which concerns widespread misuse of private and government aircraft by Treasury Secretary Mnuchin and a host of other cabinet secretaries that has drawn massive publicity and public attention, as laid out in CREW's opening brief at pp. 4-5.

Likewise, in *Landmark Legal Foundation v. EPA* (cited in D's Opp. at 8), the court concluded the plaintiff was not entitled to expedition and, therefore, not entitled to a preliminary injunction because it had not shown it was "primarily engaged in information dissemination." 910 F. Supp. 2d 270, 275-6 (D.D.C. 2012). Here, by contrast, the Treasury Department has conceded CREW's status as an entity primarily engaged in disseminating information. October 31 Letter at 1. Moreover, with its opposition the agency in that case submitted an agency declaration that stated the plaintiff's request was "at the top of the FOIA processing queue" and gave a date by which the request would be processed, leading the court to question whether the requested injunction "would afford any additional relief to [the plaintiff]." *Id.* at 275. Those or equivalent facts are completely missing here.

Similarly, the two-page unpublished order in *Electronic Privacy Information Center v. Dep't of Justice*, No. 03-2078 (D.D.C. Oct. 20, 2003) (Exhibit C to D's Opp.), provides no basis to deny the requested injunction here, as it is silent on the factual underpinnings of the court's decision. In *Al-Fayed v. CIA* (cited in D's Opp. at 8), the court denied the preliminary injunction motion because the requested information "constitute[d] neither a breaking news story . . . nor an issue involving 'widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence[.]'" No. 00-202092, 2000 U.S. Dist. LEXIS

1476, at *12-13 (D.D.C. Sept. 20, 2000) (citation omitted).  This case stands in stark contrast, as it involves a subject in which there is exceptional and widespread media interest and goes to the heart of the integrity of a top government official, Treasury Secretary Mnuchin.  Finally, in *Judicial Watch v. Dep't of Justice*, No. 00-1396 (D.D.C. June 27, 2000) (Exhibit D to D's Opp.), the plaintiff had not even requested expedition from the agency, thereby undermining its emergency motion for expedited treatment.

Far from showing that courts in this district "routinely deny" requests for preliminary injunctions, D's Opp. at 8, the cited cases stand only for the proposition that under the facts each presented, the plaintiff could not satisfy the requirements for a preliminary injunction.  Further, all share a recognition that under the right circumstances, agencies can be preliminarily enjoined in the expedition of a FOIA request.

### c.   The Treasury Department's untimely denial of CREW's request for expedition lacks merit and therefore does not alter Plaintiff's need for preliminary injunctive relief.

Long after the 10-day period for deciding requests for expedition had expired, and after CREW filed its preliminary injunction motion, the Treasury Department advised CREW its request for expedition was denied "based, in part, on the publicly available report dated October 4, 2017 by Treasury's Office of Inspector General ["IG Memo"]." October 31 Letter at 2.  In other words, having unduly delayed responding to the expedition request, the Treasury Department now seeks to take advantage of that delay and the information the agency released in the interim through the IG Memo (Exhibit A to D's Opp., Dkt. 11-1).

The IG Memo, however, is no substitute for the information CREW seeks in its FOIA request, and its disclosure does not eliminate the compelling public interest in and need for the documents CREW has requested. The memo merely summarizes in very broad-brush terms the records that were reviewed, leaving the public no way to verify the accuracy of the memo's conclusions. For instance, the actual language the Secretary used in requesting authorization for non-commercial aircraft that is essential in evaluating whether that use was justified is not included in the IG Memo, but would be included in records responsive to CREW's request. Only through the requested documents will CREW and the public be able to properly evaluate the propriety of the Secretary's actions.[4]

**2.      CREW and the public will suffer irreparable harm if its requested injunction is denied.**

The Treasury Department's arguments on irreparable injury give short shrift to the significant public interest disclosure will serve, and the peril we face as a nation, with serious questions pending about the integrity of one of the most senior administration figures at a time when that individual is spearheading major tax cuts that are predicted to inflict financial pain on millions of Americans. Secretary Mnuchin's private and government plane travel provoked near universal outrage; the picture of him deplaning from a military plane with his wife decked out in designer clothes quickly came to symbolize the worst excesses of this administration.

---

[4] Indeed, it appears that the counsel to the IG merely conducted an "inquiry," which he summarized in a memo that did not include in the publicly available version any of the documentation he reviewed to prepare his memo. IG Memo at 1.

First, the government argues CREW is relying on a "subjective opinion of what constitutes timely processing" to support is claimed harm.  D's Opp. at 13.  There is nothing subjective, however, about relying, as CREW does, on the determination Congress made in enacting the FOIA that agencies must make a determination on non-expedited requests within 20 business days, and the statute's safety valves that the Treasury Department has failed to invoke.  Further, as explained above, the government has offered zero facts to support its claim it is processing CREW's FOIA request as soon as practicable.

Second, in arguing CREW has failed to demonstrate irreparable injury absent the requested relief, the government relies on an improperly truncated understanding of harm.  Although there is no one imminent deadline to which the requested information relates, it concerns fast-moving headliner events in an ever-growing controversy.  As an example, it recently came to light that a top aide to Secretary Mnuchin flew on a private jet owned by a billionaire hedge fund owner,[5] raising yet more questions about the ethics of this kind of travel by top Treasury officials.  Another recent article concerning a flight by Energy Secretary Rick Perry to South Africa, accompanied by his wife, noted that this trip "has raised a host of unanswered questions . . . *at a time when investigations into the use of chartered flights are occurring across the federal government*."[6]  Understandably the Treasury Department may wish this scandal would go away, but unfortunately it

---

[5] *See, e.g.*, Tom Hamburger and Damian Paletta, <u>Hedge Fund Billionaire Flew Top Mnuchin Aide on Private Jet to Palm Beach</u>, *Washington Post*, Oct. 3, 2017, *available at* https://www.washingtonpost.com/news/wonk/wp/2017/10/03/hedge-fund-billionaire-flew-top-mnuchin-aide-on-private-jet-to-palm-beach/?utm_term=.96032fdbdb2b.

[6] Hannah Northey, <u>Anita Perry Travels as Department 'Asset'</u>, *E & E News*, Oct. 30, 2017 (emphasis added), *available at* https://www.eenews.net/stories/1060065063.

continues to grow.  Without the requested information, CREW and the public will be unable to fully and effectively evaluate conduct and questions that bear directly on the ethics of top government officials, left instead with only a partial story from summary information contained in a single memo.

The government suggests any ongoing public interest was extinguished by the IG Memo's conclusion that Secretary Mnuchin's use of military aircraft did not violate the law.  D's Opp. at 15.  But without the documentation the IG counsel reviewed and relied on, the public is unable to effectively evaluate the merits of the IG Memo's conclusions. Further, as that memo points out, the amount of proof provided to justify the Secretary's trips differs significantly from the standard of proof then-governing guidelines required. IG Memo at 20.  Notably, the justifications the Secretary offered are among the information CREW seeks, demonstrating its value to CREW and the public is a far cry from the "rank speculation" the government claims it to be.  D's Opp. at 16

Allowing the Treasury Department to continue at its current leisurely pace also would undermine a core purpose of the FOIA.  Congress enacted the FOIA "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. U.S. 214, 242 (1978).  In comparable circumstances involving a FOIA request for information on the treatment and rendition of detainees, the court in *ACLU v. Dep't of Defense*, 339 F. Supp. 2d 502, 504 (S.D.N.Y. 2004), stated:

> The information plaintiffs have requested are matters of significant public interest.  Yet, the glacial pace at which defendant agencies have been responding to plaintiffs' requests shows an indifference to the commands of FOIA,

and fails to afford accountability of government that the act requires.  If the documents are more of an embarrassment than a secret, the public should know[.]

Here, too, the Treasury Department is responding at a near glacial pace, especially given the narrow scope of CREW's request and the likely small universe of responsive records that almost certainly have been identified in light of other investigations into this matter, demonstrating a similar "indifference to the commands of FOIA," *id.*, perhaps to avoid further embarrassment.  Government accountability in the present circumstances demands immediate access to the requested records.  *See Allied Progress v. Consumer Fin. Prot. Bureau*, No. 17-686, 2017 U.S. Dis. LEXIS 67889, at *20 (D.D.C. May 4, 2017) (acknowledging an "overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate.") (citation omitted).

>      **3.**      **The balance of harms tips decidedly in CREWs favor.**

In an effort to overcome the clear harm to CREW and the public absent an injunction, the government argues such relief would "compromise the delicate balancing of interests" the FOIA represents because it would require the agency to divert resources from other requests and unfairly place CREW at the head of the queue.  D's Opp. at 17-18.  The agency, however, has offered no factual support to back up these claims, leaving this Court with no information about whether there even is a backlog at the Treasury Department; if there is, how large that backlog is and where CREW's request fits in; the level of agency resources CREW's request would require; and the time necessary to complete processing CREW's request.  Without such information, the Court has no basis to conclude the balance of harms tips in the government's favor.

On the other hand, there is ample evidence that without an injunction CREW and the public will suffer real harm that outweighs any disruption to other pending requests. CREW's demonstrated entitlement to expedition necessarily means its request will receive priority over other requests, something the FOIA considers by its requirement that an agency move as quickly as practicable to process an expedited request.  Where, as here, serious questions have been raised about the ethical and legal conduct of a top government official, it is difficult to imagine a more pressing public interest that would justify further delay in the public's access to critical information.  Quite simply, the public deserves the full story.

**4.      The requested injunction is proper and within this Court's power to award.**

Finally, the Treasury Department argues a preliminary injunction would be improper here as it would "bypass the litigation process and achieve a rapid victory[.]" D's Opp. at 19.  This claim reflects a fundamental misunderstanding of the nature of FOIA litigation.  Here, CREW's requested relief includes a request that the Court "[r]etain jurisdiction of this action to ensure no agency records are wrongfully withheld." Compl., Requested Relief, ¶ 4.  The Treasury Department has not challenged this requested relief as outside the scope of the Court's powers, nor could it.  *See Daily Caller*, 152 F. Supp. 3d at 100 ("where a requester seeks judicial review . . . the agency may continue to process the request, and the court . . . will supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request") (citation omitted).  Thus, if the Court enters the requested relief, the litigation will continue until any challenged exemption claims are resolved.  The interim injunctive relief, however, would only put CREW in the position it would be in

had the agency complied with its obligations under the FOIA.

The government also raises the specter of a larger tactical effort by FOIA requesters like CREW to jump ahead of others waiting in the FOIA queue.  D's Opp. at 19.  The more logical explanation is that in these extraordinary times, when governmental norms are being challenged and violated daily, the public's critical need for information that would shed light on what our government is up to is increasing exponentially.  In any event, CREW's request for a preliminary injunction stands on its own, justified by the Treasury Department's failure to process its FOIA request as soon as practicable.

## CONCLUSION

For the foregoing reasons and those set forth in CREW's opening brief, CREW's motion for a preliminary injunction should be granted.

Respectfully submitted,

  */s/ Anne L. Weismann*
Anne L. Weismann
(D.C. Bar No. 298190)
Adam J. Rappaport
(D.C. Bar No. 479866)
Citizens for Responsibility and Ethics
        in Washington
455 Massachusetts Ave., N.W.
Washington, D.C.  20001
Phone: (202) 408-5565
aweismann@citizensforethics.org

Dated:  November 7, 2017                    *Attorneys for Plaintiff*